# 2014-1085

# United States Court of Appeals
# for the Federal Circuit

NYKO TECHNOLOGIES, INC., a California corporation,

*Plaintiff-Appellant,*

v.

ENERGIZER HOLDINGS, INC., a Missouri corporation,
EVEREADY BATTERY COMPANY, INC., a Delaware corporation,
and PERFORMANCE DESIGNED PRODUCTS LLC,
a California limited liability company,

*Defendants-Appellees.*

*Appeal from the United States District Court for the Central District of
California in No. 2:12-CV-03001-GAF-VBK, Judge Gary Feess*

## BRIEF OF DEFENDANTS-APPELLEES ENERGIZER HOLDINGS, INC., EVEREADY BATTERY COMPANY, INC., and PERFORMANCE DESIGNED PRODUCTS LLC

STEVEN M. HANLE
SHEPPARD MULLIN
RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626
(714) 513-5100
shanle@sheppardmullin.com

DANIEL Y. YANNUZZI
GRAHAM (GRAY) M. BUCCIGROSS
MATTHEW M. MUELLER
SHEPPARD MULLIN
RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, California 92130
(714) 513-5100
dyannuzzi@sheppardmullin.com
gbuccigross@sheppardmullin.com
mmueller@sheppardmullin.com

*Attorneys for Appellees Energizer Holdings, Inc.,
Eveready Battery Company, Inc., and Performance Designed Products LLC*

April 28, 2014

# CERTIFICATE OF INTEREST

Counsel for Defendants-Appellees Energizer Holdings, Inc., Eveready Battery Company, Inc., and Performance Designed Products LLC certifies the following:

1.    The full name of every party or amicus represented by me is: Energizer Holdings, Inc., Eveready Battery Company, Inc., and Performance Designed Products LLC.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are: Energizer Holdings, Inc. owns Eveready Battery Company, Inc.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Steven M. Hanle, Daniel Yannuzzi, Graham Buccigross, and Matthew Mueller of Sheppard Mullin Richter & Hampton LLP.

Gerritt Warren Bleeker, Art Hasan, and Katherine L. Quigley of Christie Parker Hale.

Dated: April 28, 2014

By: /s/ *Steven M. Hanle*
*Attorney for Defendants-Appellees*
*Energizer Holdings, Inc., Eveready*
*Battery Company, Inc., and*
*Performance Designed Products LLC*

i

# TABLE OF CONTENTS

*Page*

CERTIFICATE OF INTEREST ..................................................................................i

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF RELATED CASES ......................................................................1

JURISDICTIONAL STATEMENT .........................................................................1

STATEMENT OF THE ISSUES..............................................................................1

STATEMENT OF THE CASE.................................................................................2

STATEMENT OF THE FACTS ...............................................................................3

    A.    Nyko's Charge Base Products..................................................3

    B.    The Provisional Application..................................................6

    C.    The '295 Application ...........................................................9

    D.    The '848 Patent ................................................................12

    E.    The District Court Found That The Asserted Claims Cannot Claim Priority To The Provisional Application ...................................13

    F.    Irrelevant Facts Included In Appellant's Statement of the Case.........14

SUMMARY OF THE ARGUMENT ....................................................................15

ARGUMENT ......................................................................................................17

    I.    Standard Of Review - Summary Judgment Should Be Affirmed On Any Ground Supported By The Record.......................................17

    II.    The Asserted Claims Are Not Entitled To The Priority Of The Provisional Application........................................................................18

        A.    The Provisional Application Does Not Support All Elements of the Asserted Claims Of The '848 Patent ..............18

B. The Provisional Application Does Not Disclose The DC Ports On The Base ...................................................................27

C. The Provisional Application Does Not Disclose Male Mini-USB Connectors Supported By The Base .......................29

D. The Asserted Claims Are Supported By New Matter .............32

E. The District Court's Decision Was Not Based Solely On The Claims Of The Provisional Application ...........................36

F. The Court Was Not Confused About "Teaching Away"..........37

G. The Testimony of Nyko's Expert Does Not Create a Disputed Issue of Material Fact .................................................39

CONCLUSION ......................................................................................41

CERTIFICATE OF SERVICE .............................................................42

CERTIFICATE OF COMPLIANCE......................................................44

# TABLE OF AUTHORITIES

*Page(s)*

## Cases

*Afg Indus., Inc. v. Cardinal Ig Co., Inc.*,
    239 F.3d 1239 (Fed. Cir. 2001) .....................................................................28

*Anascape, Ltd. v. Nintendo of Am., Inc.*,
    601 F.3d 1333 (Fed. Cir. 2010) ............................................................ *passim*

*Bliesner v. Commc'n Workers of Am.*,
    464 F.3d 910 (9th Cir. 2006) ........................................................ 14, 17, 37

*Bone Care Intern., LLC v. Pentech Pharms.*,
    741 F. Supp. 2d 865 (N.D. Ill. 2010) ...........................................................19

*Chiron v. Genentech*,
    363 F.3d 1247 (Fed. Cir. 2004) .................................................................. 33, 34

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,
    635 F.3d 1373 (Fed. Cir. 2011) .....................................................................23

*Hamilton Beach Brands, Inc. v. Sunbeam Prods., Inc.*,
    726 F. 3d 1370 (Fed. Cir. 2013) ...................................................................35

*Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*,
    2012 U.S. Dist. LEXIS 97923 (E.D. Va. 2012) ..................................... 34, 35

*In re Chu*,
    66 F.3d 292 (Fed. Cir. 1995) .......................................................................33

*In re Van Lagenhoven*,
    458 F.2d 132 (CCPA 1972) ..........................................................................33

*Jepson v. Coleman*,
    314 F.2d 533 (CCPA 1963) .................................................................. 20, 21

*King Pharms., Inc. v. Eon Labs., Inc.*,
    616 F.3d 1267 (Fed. Cir. 2010) ...................................................... 14, 17, 37

*Lockwood v. Am. Airlines, Inc.*,
    107 F.3d 1565 (Fed. Cir. 1997) ............................................................ *passim*

*Martin v. Mayer,*
    823 F.2d 500 (Fed.Cir.1987) ........................................................... 20, 21, 40

*Medrad, Inc. v. Tyco Healthcare Group LP,*
    466 F.3d 1047 (Fed. Cir. 2006) ...................................................................17

*New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.,*
    298 F.3d 1290 (Fed. Cir. 2002) ........................................................... *passim*

*PowerOasis, Inc. v. T-Mobile USA, Inc.,*
    522 F.3d 1299 (Fed. Cir. 2008) ...................................................................19

*Transco Products, Inc. v. Performance Contracting Inc.,*
    38 F.3d 551 (Fed. Cir. 1994) ........................................................................33

*Tronzo v. Biomet, Inc.,*
    156 F.3d 1154 (Fed. Cir. 1998) ........................................................... 26, 38

*Vas-Cath Inc. v. Mahurkar,*
    935 F.2d 1555 (Fed.Cir.1991) .....................................................................20

## Statutes

35 U.S.C. § 102 .................................................................................................25

35 U.S.C. § 102(b) ..................................................................................... 1, 2, 3

35 U.S.C. § 112 ......................................................................................... 18, 31, 32

35 U.S.C. § 119(e)(1) .......................................................................................18

35 U.S.C. § 132 ........................................................................................... 33, 34

## Rules and Regulations

Fed. R. Civ. P. 54(b) .........................................................................................1, 2

Fed. R. Evid. 702 ...............................................................................................40

MPEP § 211.05, <u>Sufficiency of Disclosure in Prior-Filed Application</u> ..................33

## STATEMENT OF RELATED CASES

No other appeal arising from this civil action in the district court is before this or another appellate court.

## JURISDICTIONAL STATEMENT

Appellees agree with Appellant's jurisdictional statement except to note that the judgment appealed from was entered pursuant to Fed. R. Civ. P. 54(b). (A21-22.)

## STATEMENT OF THE ISSUES

1.      Should the district court's summary judgment of invalidity under 35 U.S.C. §102(b) be affirmed <u>on any grounds</u>?

a.      Are the Asserted Claims of the '848 patent, which do not require an "adapter," entitled to the priority of the Provisional Application which only discloses embodiments with an adapter?

b.      Are the Asserted Claims of the '848 patent entitled to the priority of the Provisional Application that does not disclose DC ports "on the base" (claim 1), which configuration is also included in the term "supported by the base" (claim 13)?

c.      Are the Asserted Claims entitled to the priority of the Provisional Application where they are supported by new matter not present in the Provisional Application?

d.      Does Appellant's expert testimony create a disputed issue of

material fact where the objective content of the Provisional Application is

undisputed?

## STATEMENT OF THE CASE[1]

Appellant filed this action on April 5, 2012 (A406-433 at A409) and applied

for a temporary restraining order on May 10, 2012. (A410.)  After several rounds

of briefing and a hearing, the district court denied Appellant's application on June

1, 2012.  (A753-65.)  After briefing and a hearing, the district court issued a claim

construction order on June 12, 2013.  (A46-70.)  On August 29, 2013, Appellees

filed a motion for summary judgment, contending that the Asserted Claims of the

'848 patent (1-5, 7-8, 10-13 and 14-17) are invalid pursuant to 35 U.S.C. §102(b).

(A1681-A2118.)  After further briefing and a hearing, the district court granted the

motion on October 22, 2013, finding that the invention of the Asserted Claims was

in public use and on sale more than one year before the March 7, 2008 priority date

of the Asserted Claims.  (A23-45.)  Appellees requested that the district court enter

judgment pursuant to Fed. R. Civ. P. 54(b) and Appellant did not oppose.  (A4008-

10, A431.)  On November 4, 2013, the district court entered judgment in favor of

---

[1]      Appellant's brief ("AOB") includes its Statement of Facts under the heading
"Statement of the Case".  (*See* AOB p. 3.)

Appellees on the ground that all Asserted Claims are invalid pursuant to 35 U.S.C.

§102(b).  (A21-22.)

Appellant appeals on the sole ground that it contends that the Asserted

Claims are entitled to the priority date of a provisional application filed October

24, 2007  ("Provisional Application" or "Provisional").  (*See* AOB p.7, FN2.)

Appellant does not challenge the district court's holdings that the invention of the

Asserted Claims was in public use and on sale as of January 8, 2007.  (*Id.*; A30,

A42, A43-44.)

## STATEMENT OF THE FACTS

### A.     Nyko's Charge Base Products

Appellant Nyko Technologies, Inc. ("Appellant" or "Nyko") publicly

demonstrated and offered for sale a product it called "Charge Base" no later than

January 8, 2007.  (A30, A42, A43-44.)  The Charge Base product included male

mini-USB connectors on a base configured such that a user would plug mating

female mini-USB connectors on game controllers directly into the male mini-USB

connectors.



(A113)                                          (A1689)

Several months later, Nyko decided to change the design of its Charge Base product to include two docking bays rather than four, and to attach adapters to the controllers to facilitate the connection to the body of the charger.  (A1950.)  With this design, the male USB connectors that were previously on the body of the Charge Base were instead placed on separate adapters that were configured to be attached to and remain on the controllers while the controllers were used for game play.  Nyko refers to this product as Charge Base 2.  (A1949, A1950.)   In approximately October 2007, Nyko decided to seek patent protection for the Charge Base 2 design.   (A1949.)  Nyko considered the Charge Base 2 a significant advancement over the first version.  As described in a Nyko press release, the Charge Base 2 employed "a totally new contact point dongle system that makes charging your controllers easier than ever" consisting of "two light weight Mini

USB charge adaptors that attach to the controller and allow for easy drop and charge functionality … ." (A1950 (emphasis added).)

On October 24, 2007, Nyko employee Amir Navid filed the Provisional Application directed to the Charge Base 2 product and describing adapters that facilitate the connection between the controllers and the base. (A71-100.) Indeed, the Provisional Application describes the very features touted in the Charge Base 2 press release:

> In use, the connector 42 on the adapter 16 is connected to the power input port of the accessory device to be charged, such as [a] hand-held controller … . When the controller needs to be recharged, connecting it to the charging station 10 is as easy as dropping it into the docking bay 12, 14. The adapter 16 slides easily into the recess 30, and the electrical leads 22 on the bottom of the adapter 16 make an electrical connection with the electrical contacts 20 in the recess 30.

(A80.)

Significantly, Nyko had not filed for patent protection on the original Charge Base design, with DC ports on the base itself, or on any charge stand for wireless controllers. (A71-100, A1949, A2073.) As addressed below, the Provisional Application is directed solely to the Charge Base 2 invention, and does not disclose the Charge Base that Nyko had been selling for months, with DC ports on the base rather than on a separate external adapter.

**B.     The Provisional Application**

The Provisional Application was filed October 24, 2007.  (A71.)  Nyko

argues that the Provisional Application discloses all elements of the Asserted

Claims of the '848 patent and that the Asserted Claims are therefore entitled to the

priority date of the Provisional Application.  Nyko is incorrect based upon the

undisputed content of the Provisional Application, which discloses the adapter as a

key feature of the invention.

Indeed, the Provisional Application expressly teaches away from elements

of the Asserted Claims (DC ports on the base of the charging system), as it teaches

that the DC ports can be easily bent or broken when repeatedly plugging and

unplugging the controller to and from the charging system.  In describing the

background prior art, the Provisional Application states:

> [0003] Frequent replacement of batteries can be expensive, and as a
> result many accessory devices utilize rechargeable batteries. The
> accessory device is connected to a charging station periodically to
> recharge the batteries. <u>The charging station and the accessory device
> have matching plugs or ports that fit together to make a connection.</u> If
> the plug on the charging station or the accessory device is broken or
> damaged, the accessory device can no longer be connected to the
> charging station. These plugs can be small and/or fragile, as the
> accessory device itself is often a small, compact device. These small
> plugs can be easily bent or broken, rendering the charging station
> inoperable. <u>The user has to be careful to connect the plugs slowly,
> gently, and completely, in order to make a proper connection without
> damaging the parts</u>.

(A76 (emphasis added).)

The Provisional Application then describes that the object of the invention is

to overcome these problems:

> [0004] Thus, it is desirable to provide an improved charging station
> that allows for <u>fast, easy, and reliable connection</u> between the
> accessory device and the charging station.

(A77 (emphasis added).).

To achieve this object, and avoid the unwanted problem of damaging the DC

ports, the Provisional Application describes a male DC connector on an external

adapter that plugs into the female DC port of the controller. This external adapter

remains connected to the controller during game play (i.e., when the controller is

not connected to the charging station), and when the controller/adapter are placed

into a docking bay on the base of the charging system. This separate external

adapter is described as item 16 in the Provisional Application:

> [0022] In use, the connector 42 on the adapter 16 is connected to the
> power input port of the accessory device to be charged, such as the
> hand-held controller 26 shown in FIGs. 5 and 6. The adapter 16 is a
> small and light-weight piece that connects snugly to the power input
> port of the hand-held controller 26. The adapter 16 can remain with
> the hand-held controller 26 at all times, even when the controller 26 is
> not being charged in the charging station 10. When the hand-held
> controller 26 is in use during operation of a video game, when the
> controller 26 is stored, and when it is charging, the adapter 16 can
> remain connected to (and physically mounted on) the controller 26.
> The adapter 16 is small and light weight, so that it does not interfere
> with operation of the controller 26. When the controller needs to be
> recharged, connecting it to the charging station 10 is as easy as
> dropping it into the docking bay 12, 14. The adapter 16 slides easily
> into the recess 30, and the electrical leads 22 on the bottom of the
> adapter 16 make an electrical connection with the electrical contacts

20 in the recess 30. The charging station 10 is connected to a power supply through its own power input. The charging station 10 then provides power to the controller 26 to recharge the controller's batteries. This recharging process is fast and easy, as the adapter 16 allows the controller to be simply dropped into place, rather than carefully connected to a fragile port or connector.

(A80-81.)



As shown in the figures above, the DC ports 42 are not on the charger base

10, but are instead located on external adapters 16, which are separate from the

charger base, and which are intended to remain on the gaming controllers during

use.  (A80, A89, A91, A94.)  To the extent that the Provisional discloses more than

one embodiment, every embodiment of the Provisional includes an external

adapter.  (A76-A95.)  Similarly, the single independent claim of the Provisional

(and thus all the dependent claims), include "an external adapter."  (A85-86.)[2]

### C.    The '295 Application

On March 7, 2008, five months after the filing of the Provisional

Application and more than a year after placing the Charge Base in public use and

on sale, Nyko filed Application No. 12/044,295 ("the '295 Application") (A136-

93), which is the application that resulted in the '848 Patent.  (A101-134.)  In

addition to the contents of the Provisional Application, the '295 Application

includes, for the first time, extensive description and multiple new drawings of a

charging system with "DC ports on the base," and not requiring a separate external

adapter with a DC port to facilitate the connection between the controllers and the

charge base.  (A139, A147, A164, A170, A181-85.)  The DC ports 408 on the base

depicted in Figs. 11-13 of the '295 Application are "male mini-USB connectors"

that mate with the female mini-USB connectors of wireless gaming controllers.

(A153 (¶0083), A181-82.)

---

[2]    Nyko argues that claim 11 of the Provisional ("Apparatus as shown and described herein") somehow claims the subject matter of the Asserted Claims, yet fails to explain how that claim would somehow cover what is neither shown nor described.  (AOB 26-27.)



**'295 Application (A181, A184)**     **Provisional Application (A89, A94)**

Figures 11 and 15 of the '295 Application, on the left above, are not present

in the Provisional Application.  A comparison of these figures with the similar

figures in the Provisional clearly shows the differences between the embodiment

described in the Provisional – DC ports on separate adapters – and the embodiment

first described in the '295 Application and covered by the Asserted Claims of the

'848 patent – DC ports on the charger base.  For example, Figs. 11 and 15 of the

'295 Application show DC ports 408 on the charger base, while the charger base

disclosed in the Provisional includes contacts 20 (A89, A94).  The '295

Application <u>also</u> includes the adapter embodiment described and depicted in the

Provisional Application <u>as an entirely separate embodiment</u>.  Specifically, the '295

Application discloses "another exemplary embodiment of the invention, shown in

FIGs. 16-23" with electrical contacts 520 on the base instead of DC ports.  (A138-

39, A156-62, A185-193.)  Nyko concedes that the adapter embodiment is a

separate embodiment from the embodiment(s) with DC ports directly on the base.

(AOB pp. 7-8.)  As in the Provisional Application, the DC ports 542 that connect

to the controllers are located on external adapters 516, which are <u>separate from the</u>

<u>base</u> as clearly shown in Figs. 17 and 22, which correspond to Figs. 2 and 7 of the

Provisional.  (A159, A186, A188, A191.)



On the opposite surface of the adapters from the DC ports are electrical leads 522 that make contact with the electrical contacts 520 on the base to provide an electrical connection to provide power to the controllers. (*Id.*)

The '295 Application includes 4 independent claims, 1, 14, 19 and 21. (A164-69.) Claim 21 is clearly directed to the Adapter embodiment disclosed in the Provisional Application (A168) and claims 1, 14 and 19 are clearly directed to at least the new embodiment with DC ports directly on the base (A164).[3] This further confirms that the embodiment of the charging system with the DC ports on the base was a different invention from the adapter embodiment disclosed in the Provisional Application. Thus, all of the language and figures describing the invention with DC ports on the base are new matter in the '295 Application.

## D. The '848 Patent

Each of the Asserted Claims of the '848 patent requires either "a plurality of DC ports on the base" of the charging system configured to provide power to a power input port of a wireless controller (claims 1-5, 7, 8, and 10-12) or "a plurality of male mini-USB connectors supported by the base" (claims 13, 14-17).

---

[3] Even assuming, *arguendo*, that claims 14 and 19 of the '295 Application are deemed to cover the adapter embodiment, they are broader than the claims of the Provisional because they also cover the new embodiment with DC ports on the base. Because these broader claims are supported by new matter in the '295 Application, they are not entitled to the priority of the Provisional. (*See infra* § III.D.)

(A133.) As discussed above, the Provisional does not disclose DC ports of any kind on the base, and only discloses embodiments where the male USB connector is, instead, on and supported by a separate external adapter.

Thus, contrary to the Asserted Claims, the Provisional Application does not disclose a charging device with DC ports on the base or supported by the base and is specifically directed to a device where the DC ports are on and supported by an external adapter that remains attached to the controller. (A83, A94.) Because a device with DC ports on the base was not disclosed in the Provisional Application from which Nyko attempts to claim priority, the effective filing date of the Asserted Claims is March 7, 2008, the filing date of the '295 Application.

### E. The District Court Found That The Asserted Claims Cannot Claim Priority To The Provisional Application

In granting Appellees' motion for summary judgment, the district court found that the Asserted Claims are not entitled to the priority date of the Provisional Application. While Nyko contends that the district court improperly based its analysis only on the claims of the Provisional, a review of the district court's order shows that it both framed and decided the issue correctly:

> …the only question at issue is whether the '364 Provisional adequately supports the claims of the '848 Patent.
>
> The undisputed facts demonstrate that the claims at issue are not adequately disclosed by the '364 Provisional. First, the '364 Provisional "discloses only a charging system with an external adapter, where the DC ports are on the adapter, and not on the base or supported by the base" as required by the '848 Patent. Second, the

'364 Provisional requires the controller to attach "directly to the external adapter, rather than directly to the base." And third, the '364 Provisional actually teaches away from the claims at issue in the '848 Patent by discussing the failings of a system without an external adapter.

(A35 (citations omitted).)

In reaching its conclusion, the district court analyzed the entirety of the Provisional Application, the specification and figures, and not just the claims of the Provisional Application. (A35-38.) Regardless of any ambiguous statements in the district court's order, its conclusion was correct and should be affirmed. *See Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir. 2006); *King Pharms., Inc. v. Eon Labs., Inc.*, 616 F.3d 1267, 1278 (Fed. Cir. 2010).

## F. Irrelevant Facts Included In Appellant's Statement of the Case

Nyko's Statement of the Case includes substantial matter that is irrelevant to the issues on appeal, and which Appellees dispute. For example, Appellees dispute that Nyko or the inventor Navid were the first to solve "the problem of conveniently and simultaneously charging multiple game controllers having fragile charging receptacles," and dispute that the Asserted Claims are novel and non-obvious. (AOB pp. 3-7; *see* A753-A765; A4011-4041.) Appellees further dispute that their accused devices infringe the Asserted Claims. (AOB pp. 10-11; *see* A4011-4041.) Regardless, this material is irrelevant to sole issue raised on appeal

14

– whether the Asserted Claims are entitled to the priority of the Provisional
Application.

## SUMMARY OF THE ARGUMENT

The district court correctly found that the Asserted Claims are not entitled to
the priority date of the Provisional Application, and granted summary judgment
because the invention of the Asserted Claims was in public use and on sale more
than one year before the March 7, 2008 filing date of the '295 Application. Nyko
does not challenge on appeal that the invention of the Asserted Claims was in
public use and on sale more than one year before March 7, 2008. Thus, this Court
should affirm the district court if it concludes, on any ground supported by the
record below, that the Asserted Claims are not entitled to the priority date of the
Provisional Application.

Nyko's arguments below and on appeal that the Provisional disclosed the
original Charge Base configuration are an attempt to rewrite documented history.
Nyko placed its Charge Base product (with DC ports on the base) in public use and
on sale without seeking patent protection. When it filed the Provisional
Application, it only sought protection for an improvement to that product (Charge
Base 2), in which the DC ports were placed on adapters (external to the base) that
facilitated the connection between the controllers and the charger base. Only later,
more than a year after the public use and sale of the original Charge Base, did

Nyko seek patent protection on its original design, and in so doing included extensive new matter in the '295 Application, filed March 7, 2008.

Based on the undisputed contents of the Provisional Application, the Asserted Claims are not entitled to the priority of the Provisional Application because that application only discloses embodiments with a necessary adapter and the Asserted Claims do not require an "adapter."   Similarly, the Asserted Claims of the '848 patent are not entitled to the priority of the Provisional Application because that application does not disclose DC ports "on the base" (claim 1). Because the term "male mini-USB connectors supported by the base" (claim 13) is broad enough to include such connectors directly *on the base*, claim 13 is likewise not entitled to the priority of the Provisional.  While not expressly couched in these terms by the district court, the Asserted Claims are also not entitled to the priority of the Provisional Application because they are supported by extensive <u>new matter</u> not present in the Provisional Application.

Nyko's criticisms of the district court's ruling are without merit.  The district court correctly based its ruling on the entirety of the Provisional Application, and not merely its claims.  The district court correctly determined that the testimony of Nyko's purported expert regarding what one might *derive* from the Provisional Application does not override the objective contents of that application, and thus does not create a disputed issue of <u>material </u>fact.  The district court also correctly

observed that the Provisional Application teaches away from the configuration of

the Asserted Claims; but the district court's priority determination was correct

regardless of the correctness of this observation.

## ARGUMENT

## I.     Standard Of Review - Summary Judgment Should Be Affirmed On Any Ground Supported By The Record

This Court reviews a district court's grant of summary judgment of

invalidity de novo, and may affirm the district court on any ground supported by

the record.  *Medrad, Inc. v. Tyco Healthcare Group LP*, 466 F.3d 1047, 1050 (Fed.

Cir. 2006); *Bliesner v. Commc'n Workers of Am.*, 464 F.3d 910, 913 (9th Cir.

2006) ("We review [a grant of summary judgment] de novo and may affirm on any

ground supported by the record."); *King Pharms., Inc. v. Eon Labs., Inc.*, 616 F.3d

1267, 1278 (Fed. Cir. 2010) ("As an appellate court, we are not limited to a district

court's stated reasons for invalidating claims and can affirm a grant of summary

judgment on any ground supported by the record and adequately raised below.")

Here, this Court should affirm the district court because the Asserted Claims

are not fully supported by the Provisional Application.  In addition, the Asserted

Claims are supported by new matter not included in the Provisional, and only

present in the later-filed non-provisional '295 Application.  While the district court

did not expressly address the issue of new matter, it was raised below and is fully

supported by the record.  (A2517-19, A139, A147, A181-84.)

The only facts material to the determination of the priority issue are the contents of the Provisional Application and the '295 Application and the language of the Asserted Claims, and these facts are undisputed. The purported expert testimony proffered by Nyko "cannot override the objective content of these documents." *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1340 (Fed. Cir. 2010); *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1571-72 (Fed. Cir. 1997).

## II.    The Asserted Claims Are Not Entitled To The Priority Of The Provisional Application

### A.    The Provisional Application Does Not Support All Elements of the Asserted Claims Of The '848 Patent

For the claims of a non-provisional utility application to be afforded the priority date of a provisional application, the written description of the provisional must adequately support the claims of the non-provisional application. 35 U.S.C. § 119(e)(1); *New Railhead Mfg. L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002). "In other words, the specification of the *provisional* must 'contain a written description of the invention and the manner and process of making and using it, in such full, clear, concise, and exact terms,' 35 U.S.C. § 112 ¶ 1, to enable an ordinarily skilled artisan to practice the invention *claimed* in the *non-provisional* application." *Id.* Where, as here, there has been no priority determination at the Patent Office, no presumption of validity attaches to priority

claims and the burden is on the patentee to come forward with evidence to prove entitlement to claim priority. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008); *Bone Care Intern., LLC v. Pentech Pharms.*, 741 F. Supp. 2d 865, 873 (N.D. Ill. 2010).

Here, Nyko argues essentially that a person of skill in the art could <u>derive</u> a charging station with DC ports on the base from the disclosure of the Provisional, particularly Fig. 3, where the adapters are shown seated on the base. However, this Court has repeatedly held that later claims are not entitled to the priority of an earlier application where the invention of the later claims can be *derived* from the earlier application. The inquiry is whether the earlier application fully describes <u>as the invention</u> what is later claimed.

In *New Railhead*, this Court upheld a summary judgment ruling of invalidity based on a determination that the claims of a non-provisional application were <u>not</u> entitled to the priority date of a provisional application. The claims at issue in the non-provisional application claimed a drill bit apparatus where the drill bit was "angled with respect to the sonde housing." *New Railhead*, 298 F.3d at 1292. The plaintiff argued that, although the provisional application did not explicitly disclose this feature, one of ordinary skill could actually construct the later claimed device from the drawings in the provisional. *Id.* at 1295. The district court and this Court rejected this argument:

The purpose of the written description requirement is broader than to merely explain how to "make and use"; the applicant must also convey with reasonable clarity to those skilled in the art that, as of the filing date sought, he or she <u>was in possession of the invention</u>." *Vas-Cath Inc. v. Mahurkar,* 935 F.2d 1555, 1563-64 (Fed.Cir.1991). That is, <u>the disclosure must show he had invented each feature that is included as a claim limitation</u>. The adequacy of the written description (*i.e.,* the disclosure) is measured from the face of the application; the requirement is not satisfied if one of ordinary skill in the art must first make the patented invention before he can ascertain the claimed features of that invention. *Cf. Martin v. Mayer,* 823 F.2d 500, 505 (Fed.Cir.1987) ("It is not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure [but] whether the application necessarily discloses that particular device. (quoting *Jepson v. Coleman,* 314 F.2d 533, 536 (CCPA 1963)).

*New Railhead*, 298 F.3d at 1295 (Fed. Cir. 2002) (emphasis added).

Similarly, in *Martin v. Mayer*, 823 F. 2d 500, 502-03 (Fed. Cir. 1987), the earlier application was deemed to disclose a "high frequency attenuation cable," and the applicant was awarded priority for claims including this feature. However, the applicant also claimed priority for a claim covering a "harness comprising a plurality of high frequency attenuation cables." The Board of Patent Appeals and Interferences awarded priority for this claim as well based, on the determination that a harness of electrical cables is "conventional" to persons of skill in the art. This Court <u>reversed</u>, reiterating that "[t]he issue is not whether one skilled in the art would have been able to make a harness using knowledge of the art, but rather did Mayer's application sufficiently describe a harness of cables with conductive outer jackets." Applying that burden of proof, this Court "discern[ed] no

disclosure in the Mayer specification of a plurality of cables and no reference to a

harness of cables wherein each cable has a conductive shield…." *Id.* at 504-05.

In *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997),

this Court upheld the grant of summary judgment of invalidity because later claims

were not entitled to the filing date of a prior application:

> Entitlement to a filing date does not extend to subject matter which is not disclosed, but would be obvious over what is expressly disclosed. It extends only to that which is disclosed. While the meaning of terms, phrases, or diagrams in a disclosure is to be explained or interpreted from the vantage point of one skilled in the art, all the limitations must appear in the specification. **The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought**. *See Martin v. Mayer*, 823 F.2d 500, 504, (Fed.Cir. 1987) (stating that it is "not a question of whether one skilled in the art might be able to construct the patentee's device from the teachings of the disclosure.... Rather, it is a question whether the application necessarily discloses that particular device.") (quoting *Jepson v. Coleman*, 314 F.2d 533, 536, (1963)).

The claim for which Lockwood sought priority claimed:

> A system for automatically dispensing information, goods or services for a plurality of institutions in a particular industry, comprising:
>
> a central data processing center including means for storing service, price rate information or sales information for each institution;
>
> at least one merchandising apparatus ...
>
> ...

> said merchandising apparatus including:
>
> a means for composing and displaying individualized sales
> presentations according to determinants entered into said
> apparatus and based on a customer's profile and requests ...
>
> storage means holding a plurality of randomly accessible
> segments of data;
>
> ...
>
> means for selectively combining said determinants to
> address and retrieve at least one of said segments....

This Court found that one of the earlier applications in the needed chain of priority failed to disclose a computer system connected to multiple vendors and another, while disclosing a central computer with a video disk player, failed to disclose individual merchandising apparatus that contained video disk players or other equivalent storage means. This Court noted Lockwood's testimony that the disclosed terminal in the former application "can be connected" to multiple vendors and that, although the latter application only "discusses the use of a television set and a keypad at a consumer's home," it would have been apparent to one skilled in the art that "Lockwood also envisioned the use of a terminal" containing a video disk player. *Lockwood*, 107 F.3d at 1572.

This Court held:

> That does not solve Lockwood's problem. Lockwood claimed a
> distinct invention from that disclosed in the specification. It is
> not sufficient for purposes of the written description
> requirement of § 112 that the disclosure, when combined with
> the knowledge in the art, would lead one to speculate as to
> modifications that the inventor might have envisioned, but

failed to disclose. Each application in the chain must describe the claimed features. It is undisputed that one of the intervening applications does not describe an individual terminal containing a video disk player. Therefore, the declaration by Lockwood's expert does not raise a genuine issue of material fact. The district court correctly held that the '355 patent was invalid as anticipated by the '359 patent.

*Id.*

In *Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1340 (Fed. Cir. 2010), this Court reversed a jury verdict that the patent in suit was not invalid. It held that later claims covering video controllers having "multiple input members" that together operate in six degrees of freedom were <u>not</u> entitled to the priority of an earlier application that repeatedly and solely described a "single input member" operable in six degrees of freedom and expressed the advantages of such an embodiment. The Court also relied on the fact that the specification for the later-filed application, as here, contained substantial changes and additions supporting embodiments with more than a single input member. *Id.* at 1338. The Court reversed and held that the claims were not entitled to priority despite expert testimony that the earlier application adequately disclosed embodiments with more than a single input member, finding that such testimony "cannot override the objective content" of the applications at issue. *Id.* at 1339.[4]

---

[4]     Nyko relies extensively on *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1380 (Fed. Cir. 2011).  (*See, e.g.,* AOB pp. 24, 27-29, 48.)  This reliance is misplaced.  *Crown* does not involve a determination of whether later-filed claims are entitled to the priority of an earlier application.  Further, *Crown* focuses on whether claimed subject matter is
(footnote continued)

Here too, the Asserted Claims are not entitled to the priority date of the Provisional Application. The Provisional Application clearly and unambiguously discloses only a charging system including an external adapter, where the DC ports are on the adapter, and not on the base or supported by the base. (A133, A88-92, A94, A77-81, A76, A2100-02.)[5] In contrast, the Asserted Claims require the DC ports to be on the charger base or supported by the base, are broad enough to encompass DC ports on the base itself, and do not mention an adapter. Further, in the invention of the Provisional, the controller attaches directly to the external adapter, rather than directly to the base, as permitted (or required) by the Asserted Claims. (A80-81, A89, A91, A94, A2100-02.)

Nyko contends that the Provisional's mention of a push-fit, press-fit, or snap-fit between the adapter and the base would suggest that one could include the DC ports on the base itself. (AOB pp. 32-33.)[6] However, under the extensive authority above, any contention that the invention of the Asserted Claims could be

---

expressly disclaimed in the written description, while here the issue is whether the claimed subject matter is disclosed in the first place.

[5]    Further, in the Provisional Application, the male mini-USB connectors are on the separate adapters, and thus are not electrically coupled to the power input, as required by Asserted Claims 13 and 15-17. (A133.)

[6]    Notably, the Provisional does not teach or suggest leaving the adapter attached to the base while the controller is repeatedly plugged into and unplugged from the adapter each time it is used. (*See* AOB 47-48.) Indeed, the Provisional teaches away from this configuration because it would result in the same wear and tear issues as placing the fragile mini-USB connectors on the base itself. (A76 ¶0003, A37.)

derived from the Provisional is irrelevant. "The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought." *Lockwood,* 107 F.3d at 1572. The disclosure of the earlier application must itself show that the inventor invented each feature that is included as a limitation of the asserted claims. *New Railhead*, 298 F.3d at 1294.

Here, the Provisional does not show that the inventor invented a charging system with DC ports on the base. Indeed, the Provisional distinguishes such a device (where the "charging station and the accessory device have matching plugs or ports that fit together to make a connection") as inferior background prior art in need of improvement because the plugs can become damaged during repeated connections. (A73-77.)[7] The invention of the Provisional purports to improve on

---

[7]     From the undisputed sequence of events, it appears that Navid did not consider the Charge Base to be patentable, and first filed for patent protection in October 2007 only on the adapter invention embodied in the Charge Base 2. (A1768, A1949-50.) For unexplained reasons, Navid did not seek patent protection on the first version of the Charge Base – which was acknowledged as prior art in the Provisional Application -- until almost five months later in March 2008. (A135, A139, A147, A164, A170, A181-85, A1734.) By that time, the Charge Base had been in public use and on sale for over a year, and the Charge Base, without adapters and with DC ports on the base, was no longer eligible for patent protection under Section 102.

that prior art by including an external adapter that connects to the controller and remains there, allowing the controller and charging station to connect through contact between electrical leads on the adapter and electrical contacts on the base, which are not so easily damaged.   (A80-81, A89, A91, A94, A2100-02.)  Thus, the Provisional actually <u>teaches away</u> from the invention of the Asserted Claims. *See Anascape, Ltd. v. Nintendo of Am., Inc.*, 601 F.3d 1333, 1337 (Fed. Cir. 2010) (noting that the patent to which priority was claimed "stresses the advantages of using a single input member operable in six degrees of freedom, and describes the use of multiple input members as having 'significant disadvantages'"); *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) ("Moreover, the only reference in the '589 patent's specification to different shapes is a recitation of the prior art.  Instead of suggesting that the '589 patent encompasses additional shapes, the specification specifically distinguishes the prior art as inferior and touts the advantages of the conical shape of the '589 cup.  Such statements make clear that the '589 patent discloses <u>only</u> conical shaped cups and nothing broader." (citations omitted)).  Thus, as recognized in these cases, one would not understand the Provisional to disclose DC ports on the base as the invention when the Provisional describes the problems with that configuration and goes on the describe – extensively and exclusively – the solution to those problems.

## B.     The Provisional Application Does Not Disclose The DC Ports On The Base

The Provisional Application does not disclose DC ports on the base.  Nyko argues that, because the adapters may be connected to the base, the DC ports on the adapters are "on the base."  However, this argument directly contradicts the district court's previous determination that "on the base" contemplates direct contact. (A69.)  Indeed, this determination was based in part on Nyko's own claim differentiation argument that "supported by the base" must be broader than (and encompass) DC ports "on the base."  (*Id*.)  It is beyond dispute that the Provisional Application does not disclose DC ports that are in direct contact with the base. (A71-100.)

Alternatively, Nyko argues that, since the DC ports are on the adapters and the adapters may be placed on the base, persons of skill in the art would understand that the DC ports may be placed directly on the base.  This argument fails as a matter of law.  *See*, *e.g.*, *Lockwood v. Am. Airlines, Inc.*, 107 F.3d 1565, 1572 (Fed. Cir. 1997) ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification.")

Nyko also attempts to rely on purported expert testimony regarding colloquial uses of "on" to support its argument.  (AOB p. 36.)  This argument fails for a number of reasons.  First, there is no support for the argument that these informal colloquialisms apply in the context of patent applications for electro-

mechanical devices. *Afg Indus., Inc. v. Cardinal Ig Co., Inc.*, 239 F.3d 1239, 1248 (Fed. Cir. 2001) ("when construing a term of art, must define the term in a manner consistent with the scientific and technical context in which it is used in the patent."). Second, the analogies just do not withstand scrutiny. A parent might say to the kids, informally, "Sit down for dinner. The food is on the table." However, when accurately describing the location of the rice, one would not say that the rice is on the table. The rice is on the plate. Similarly, in the examples provided, the couple's hands are on the blanket, not on the sand, and the boy's feet are on the skateboard, not on the sidewalk.







Still further, Nyko's video game expert does not even purport to be qualified to opine as to the various linguistic uses of the word "on." (A2151-54, A2161-63.)

Nyko's colloquialisms ignore the structures and structural relationships that must be described by patent documents, and simply do not translate to the precision expected in a patent application. Nyko's semantic adventurism cannot alter the simple fact that the Provisional discloses male DC connectors on the adapters, <u>and only on the adapters</u>. Regardless, the testimony of Nyko's expert cannot override the objective content of the Provisional Application.

### C. The Provisional Application Does Not Disclose Male Mini-USB Connectors Supported By The Base

The undisputed disclosure of the Provisional Application establishes that the male mini-USB connectors 42 are embedded in and fully supported by the adapters.



(A89-91, A80, A2102.)  Nevertheless, Nyko argues that Provisional Application discloses mini-USB connectors "supported by the base," relying solely on Fig. 3 of the Provisional, shown above.  (AOB p. 30.)

As a threshold matter, the district court determined – and Nyko does not dispute –  that "supported by the base" is broad enough to include USB ports underline directly on the base.  (A70.)  As set forth above, it is beyond dispute that the Provisional does not disclose USB ports directly on the base.  Accordingly, regardless of whether the USB connectors on the adapters are also deemed to be "supported by the base" when the adapters are in the docking bays, the Provisional does not support the full scope of the claims with that limitation.

Further, an objective reading of the Provisional Application as a whole demonstrates that Fig. 3 simply underline illustrates the connection between the adapter and the base, which connection is obscured when the controller is also shown, as in Figs. 5 and 6.  Fig. 3 does not suggest a configuration where the adapter remains connected to base separately from the controllers.  (A76-77, A80-81, A88-95.) Indeed, the Provisional Application teaches away from such a configuration because it would require the repeated plugging and unplugging of USB connectors, which the invention of the Provisional Application was designed to avoid.  (A77 ("it is desirable to provide an improved charging station that allows for fast, easy, and reliable connection between the accessory device and the charging station"),

A80.)  Second, Nyko's reading of "supported by the base" would lead to absurd results, and indefiniteness under 35 U.S.C. § 112, as the male mini-USB connectors would be deemed supported by any surface on which the adapter sits or into which the USB connector is connected.   Indeed, it would be more consistent with the disclosure of the Provisional Application to say that the USB connectors are supported by the controllers since the adapters are intended to remain connected to the controllers to avoid repeated plugging and unplugging of fragile plugs and to allow the controller and attached adapter to drop easily into the recess on the base. Nyko's strained interpretation of "supported" would lead to speculation and uncertainty about the scope of the Asserted Claims.

In sum, Appellees contend that USB connectors on an adapter should not be deemed to disclose USB connectors "supported by the base."  But regardless of that determination, because this claim language encompasses DC ports <u>directly</u> on the base that are not disclosed in the Provisional, claim 13 and 14-17 are not entitled to the priority date of the Provisional.  This conclusion is underscored by a consideration of the issue from the perspective of "new matter."  As addressed below, all of the Asserted Claims are supported by <u>new matter</u> not present in the Provisional, and are thus not entitled to the priority of the Provisional.

31

### D. The Asserted Claims Are Supported By New Matter

The Asserted Claims that include "DC ports on the base" certainly include DC/USB ports <u>directly</u> on the base. The district court also determined – and Nyko does not dispute – that "supported by the base" is broad enough to include USB ports <u>directly</u> on the base. Accordingly, for the Asserted Claims to be afforded the priority of the Provisional Application, it must contain written description support for the full scope of the claims, <u>including</u> DC ports directly on the base. Yet it is beyond dispute that USB ports directly on the base were <u>not</u> disclosed in the Provisional (A71-A95) and were, therefore, new matter in the '295 Application, filed March 7, 2008. (A135-193.) Specifically, <u>at least</u> the following extensive portions of the '295 Application are new matter: ¶0008 (A139), the first paragraph of the Detailed Description (A147 ll. 4-17), ¶¶81-92 (A152-56), claims 1-20 (A164-170), the Abstract (A170), and Figs. 11-15 (A181-85).

The priority determination here is precisely analogous to the priority rule for claims supported by new matter in continuation-in-part applications:

> Any claim in a continuation-in-part application which is directed <u>solely</u> to subject matter adequately disclosed under 35 U.S.C. 112 in the parent nonprovisional application is entitled to the benefit of the filing date of the parent nonprovisional application. However, if a claim in a continuation-in-part application recites a feature which was not disclosed or adequately supported by a proper disclosure under 35 U.S.C. 112 in the parent nonprovisional application, but which was <u>first introduced or adequately supported in the continuation-in-part application</u>, such a claim is entitled only to the filing date of the continuation-in-part application. *See*, e.g., *In re Chu*, 66 F.3d 292 (Fed.

Cir. 1995); *Transco Products, Inc. v. Performance Contracting Inc*., 38
F.3d 551 (Fed. Cir. 1994); *In re Van Lagenhoven*, 458 F.2d 132, 136
(CCPA 1972).

MPEP § 211.05, <u>Sufficiency of Disclosure in Prior-Filed Application</u> (emphasis

added, parallel citations omitted). Here, the Asserted Claims are not directed

<u>solely</u> to subject matter adequately disclosed in the Provisional. Further, the '295

Application recites and claims a feature – DC ports directly on the base – which

was not disclosed in the Provisional and was <u>first introduced</u> in the non-provisional

'295 Application. Accordingly, the Asserted Claims are only entitled to the filing

date of the '295 Application.

This principle is not limited to CIP applications. In *Chiron v. Genentech*,

363 F.3d 1247 (Fed. Cir. 2004), Chiron filed suit against Genentech for infringing

its '561 patent for a "monoclonal antibody" that "binds to a human breast cancer

antigen." The claimed monoclonal antibody comprised "chimeric and humanized

antibodies." Chiron argued that the '561 patent drew priority through a chain of

patent applications in 1984, 1985, and 1986. While the word monoclonal antibody

appeared in the 1984 application, it did not have the same definition as it had in the

later filed application (chimeric and humanized antibody technology did not exist

at the time of filing the 1984 application). The definition was <u>added</u> in later

applications to encompass the full scope of the newly claimed technology. This

Court held that the newer definition was new matter, and that claims based on this

33

new matter could not enjoy the priority of the original application.  The Court

reasoned that the written description requirement prevents applicants from

updating their disclosures (claims or specifications) without losing priority.

"Otherwise applicants could add new matter to their disclosures and date them

back to their original filing date, thus defeating an accurate accounting of the

priority of invention.  *See* 35 U.S.C. § 132." *Chiron*, 363 F.3d at 1255.

   *Hamilton Beach Brands, Inc. v. Sunbeam Products, Inc.*, 2012 U.S. Dist.

LEXIS 97923 (E.D. Va. 2012), further illustrates the principle of precluding

priority where new matter is introduced to a later application to support broader

claims.  The case involved a "clip" and "catch" mechanism used to seal the pot of a

slow cooker.  In the earlier application, the clip, consisting of a hook and a lever,

was on the sidewall of the pot and the catch was on the lid of the pot.  *Id*. at *26.

When Sunbeam came out with a product with the "reverse" configuration – clip on

the lid and catch on the pot – Hamilton Beach amended a subsequent application to

define the "clip" as including the catch, so as to provide written description support

for the claims written to cover Sunbeam's product.  *Id*. at *27.  While it may have

been obvious to reverse the originally disclosed configuration, the court held that

the earlier application did not disclose a clip on the lid and a catch on the sidewall.

*Id*. at *27.  The court held that, because the later application added the broader

definition of the clip to the specification, the later claims were not entitled to the

priority of the earlier application. *Id*. at *35. This Court did not address the priority issue on appeal (*see* 726 F. 3d 1370, 1375 (Fed. Cir. 2013)), but the district court's ruling was certainly correct.

Here, it is beyond dispute that the later '295 Application added extensive disclosure of DC ports directly on the base, which was new matter not included in the Provisional Application. (e.g., A181-84.) Because the Asserted Claims are supported, at least in part, by that new matter ("supported by the base" encompasses DC ports directly on the base), they are not entitled to the priority of the Provisional Application. Significantly, the *Hamilton Beach* court rejected the very argument raised by Nyko here, that the added matter was not "new" because the earlier application was not limited to its preferred embodiment. *Id*. at *33-34. The question was not whether the earlier application was <u>limited</u> to a particular embodiment, but whether it in fact <u>disclosed</u> the allegedly new matter. *Id*. Here, it is beyond dispute that the Provisional did not disclose the embodiment of Figs. 11 – 15 of the '295 Application.

Because all of the Asserted Claims were based in whole or in part on new matter in the '295 Application filed in March 2008, those claims are not entitled to priority based on the Provisional Application.

**E.    The District Court's Decision Was Not Based Solely On The Claims Of The Provisional Application**

Nyko argues that the district court's granting of summary judgment was based on its determination that the claims of the Provisional Application did not disclose all of the elements of the Asserted Claims.  Specifically, Nyko cites to an exchange during the summary judgment hearing to argue that the district court analyzed only the claims of the Provisional Application to determine whether the disclosure was adequate.  (AOB pp. 15-17.)  This is a clear misrepresentation of the scope of analysis conducted by the district court, in which it considered the figures of the Provisional, several of which are reproduced in the district court's order.  (A28-29.)   The order also specifically addresses other parts of the written description (A35-37), including the portions that teach away from the Asserted Claims (A37), and the portion addressing adapters with a "press-fit" (*Id.*).

Most importantly, the district court correctly framed and decided the issue based on what was <u>disclosed</u> in the Provisional, not what was claimed:  "…the only question at issue is whether the '364 Provisional adequately <u>supports</u> the claims of the '848 Patent.  The undisputed facts demonstrate that the claims at issue are <u>not adequately disclosed</u> by the '364 Provisional."  (A35 (emphasis added); *see* also A24 ("the invention was not <u>described</u> in the '364 Provisional and therefore not entitled to the earlier priority date").) Regardless of any ambiguous statements at the summary judgment hearing or in the district court's order, its

conclusion was correct and should be affirmed because that is the result mandated

by the contents of the Provisional Application. *See Bliesner*, 464 F.3d at 913

(court should affirm summary judgment on any ground supported by the record);

*King Pharms.*, 616 F.3d 1267 at 1278 (same).

### F. The Court Was Not Confused About "Teaching Away"

It is Nyko, not the district court, that is confused about the basis for and

significance of the district court's observation that the Provisional Application

teaches away from the Asserted Claims. The district court observed:

> The prior point supports Defendants argument that the '364
> Provisional teaches away from the claims at issue. The '364
> Provisional declares that placing a DC port directly on a charging
> station, as the '848 Patent does, risks having the DC port damaged,
> 'rendering the charging station inoperable.' ('364 Provisional 1:24-25.)
> "Thus, it is desirable to provide an improved charging station,'
> presumably without the weakness included in the '848 Patent's claims.
> (*Id.* at 2:3-4.) In other words, the system described in the '364
> Provisional is touted as desirable precisely because it does not describe
> or encompass the system described in the claims that are at issue in this
> litigation. (A37.)

First, this observation, whether correct or incorrect, does not alter the

fundamental facts that the Provisional Application does not disclose the invention

as a charging system without an adapter and does not disclose DC ports on the

base. Second, the district court's observation is indisputably correct. The

Provisional Application describes a device with DC ports on the base (where the

"charging station and the accessory device have matching plugs or ports that fit

together to make a connection") as background prior art in need of improvement because the plugs can become damaged during repeated connections. (A76.) The Provisional Application then identifies the need to solve these problems and offers as its invention a solution in the form of an external adapter that connects to the controller and remains there in use, allowing the controller and charging station to connect through contact between electrical leads on the adapter and electrical contacts on the base, which are not so easily damaged. (A77, A80.)

Third, this Court has repeatedly found that broad later claims lack written description in an earlier application where the earlier application teaches away from embodiments within the scope of the later claims. In *Anascape,* this Court found that later claims covering controllers with multiple input members to achieve six degrees of freedom were not entitled to the priority of an earlier application that "stresses the advantages of using a single input member operable in six degrees of freedom, and describes the use of multiple input members as having 'significant disadvantages.'" 601 F.3d at 1337; *see also*, *Tronzo v. Biomet, Inc.*, 156 F.3d 1154, 1159 (Fed. Cir. 1998) ("the only reference in the '589 patent's specification to different shapes is a recitation of the prior art. Instead of suggesting that the '589 patent encompasses additional shapes, the specification specifically distinguishes the prior art as inferior and touts the advantages of the conical shape

of the '589 cup.  Such statements make clear that the '589 patent discloses <u>only</u> conical shaped cups and nothing broader." (citations omitted)).

In addressing the significance of the Provisional's teachings away from DC ports on the base, Nyko attempts to reassert its argument that the Asserted Claims are entitled to priority because the Provisional does not expressly exclude DC ports on the base.  (AOB 27-29, 43-47.)  The district court correctly rejected this argument based on this Court's authority:

> The question is not whether the provisional excludes a particular claim or claims, but whether it affirmatively discloses the pertinent claims of the later filed patent application. Here the '364 Provisional must affirmatively disclose the claims of the '848 Patent; the '848 Patent is not entitled to priority merely because the '364 Provisional fails to exclude its claims. *New Railhead*, 298 F.3d at 1294-1295; *Anascape*, 601 F.3d at 1339 (patentee is not presumed to claim variants that are not described).

Accordingly, the district court properly determined that the Provisional Application's teaching away from placing DC ports directly on the base supported its finding that it did not disclose those features of the Asserted Claims.

### G. The Testimony of Nyko's Expert Does Not Create a Disputed Issue of Material Fact

This Court has repeatedly refused to allow expert witness testimony to muddy the waters of what is and is not disclosed in an earlier application that is claimed to support later-filed claims.  *See*, e.g., *Anascape,* 601 F.3d at 1340 (expert testimony "cannot override the objective content" of the patent documents); *Lockwood*, 107 F.3d at 1571-72 ("the declaration by Lockwood's expert does not

raise a genuine issue of material fact").  Here too, Nyko's expert testimony does not create an issue of fact.  First, the essence of his opinion is that one could <u>derive</u> a charging system with DC ports on the base from the disclosures of the Provisional Application because Fig. 3 shows an adapter on the base.  (AOB 51.) As observed by the district court, "One skilled in the art may have been able to conceive of a different invention by studying the '364 application, but that invention, one that did not require an external adapter, plainly was not disclosed in the '364 Provisional."  (A36-37.)  *See Lockwood*, *supra*, ("The question is not whether a claimed invention is an obvious variant of that which is disclosed in the specification. Rather, a prior application itself must describe an invention, and do so in sufficient detail that one skilled in the art can clearly conclude that the inventor invented the claimed invention as of the filing date sought"), citing *Martin v. Mayer*, 823 F.2d 500, 504, (Fed.Cir. 1987).

Secondly, the opinion of Nyko's expert as to whether a USB port on an adapter can be deemed to disclose a DC port/USB connector on or supported by the base is naked argument, and is not an issue as to which expert testimony is either necessary or helpful.  *See* Fed. R. Evid. 702.  In sum, the Provisional Application speaks for itself, and does not disclose the subject matter of the Asserted Claims.

## CONCLUSION

The undisputed material evidence establishes clearly and convincingly that the Asserted Claims cannot claim priority to the Provisional Application. The Court should affirm the district court's judgment.

Respectfully submitted

/s/ Steven M. Hanle
STEVEN M. HANLE
SHEPPARD MULLIN
RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626
(714) 513-5100
shanle@sheppardmullin.com

DANIEL Y. YANNUZZI
GRAHAM (GRAY) M.
BUCCIGROSS
MATTHEW M. MUELLER
SHEPPARD MULLIN
RICHTER & HAMPTON LLP
12275 El Camino Real, Suite 200
San Diego, California 92130
(714) 513-5100
dyannuzzi@sheppardmullin.com
gbuccigross@sheppardmullin.com
mmueller@sheppardmullin.com

*Attorneys for Appellees Energizer
Holdings, Inc., Eveready Battery
Company, Inc., and Performance
Designed Products LLC*

**United States Court of Appeals**
**for the Federal Circuit**
*NYKO TECHNOLOGIES, INC. v ENERGIZER HOLDINGS, INC, 14-1085*

## CERTIFICATE OF SERVICE

I, John C. Kruesi, Jr., being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by SHEPPARD MULLIN RICHTER & HAMPTON LLP, Attorneys for Defendants-Appellees to print this document. I am an employee of Counsel Press.

On **April 28, 2014**, Counsel for Defendants-Appellees has authorized me to electronically file the foregoing BRIEF FOR DEFENDANTS-APPELLEES ENERGIZER HOLDING, INC., EVEREADY BATTERY COMPANY, INC., AND PERFORMANCE DESIGNED PRODUCTS LLC with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to any of the following counsel registered as CM/ECF users:

Warren Bleeker, Esq.
Art Hasan, Esq.
Katherine L. Quigley, Esq.
CHRISTIE PARKER & HALE LLP
655 N. Central Avenue, Suite 2300
Glendale, California 91203-1445
Tel: (626) 795-9900
Fax: (626) 577-8800
warren.bleeker@cph.com
art.hasan@cph.com
katherine.quigley@cph.com

*Attorneys for Plaintiff-Appellant*
*NYKO Technologies, Inc.*

Additionally, two paper copies will also be served by mailed to the above counsel at the time paper copies are sent to the Court.

Upon acceptance by the Court of the e-filed document, six paper copies will be filed with the Court, via Federal Express, within the time provided in the Court's rules.

April 28, 2014                                        /s/ John C. Kruesi, Jr.
                                                     Counsel Press

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[X] this brief contains [9,341] words, excluding the parts of the brief exempted by    Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ] this brief uses monospaced typeface and contains [state the number of] lines of     text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this brief has been prepared in a proportionally spaced typeface using Microsoft    Word 2010 in 14pt Times New Roman; or

[ ] this brief has been prepared in a monospaced typeface using [state name and version of word processing program] with [state number of characters per inch and    name of type style].


Dated: April 28, 2014            */s/ Steven Hanle*              
                                 Steven Hanle
                                 *Attorney for Appellees*
                                 *Energizer Holdings, Inc., Eveready Battery Company, Inc., and Performance Designed Products LLC*